**In the United States District Court
for the District of Kansas**

--------

Case No. 24-cr-40026-TC

--------

UNITED STATES OF AMERICA,

*Plaintiff*

v.

CHRISTOPHER AARON KUONE,

*Defendant*

--------

**MEMORANDUM AND ORDER**

Christopher A. Kuone is charged with two counts of possession of a machinegun in violation of 18 U.S.C. § 922(o). Doc. 1. He moves to dismiss his indictment, arguing that Section 922(o) violates the Second Amendment and that, even if constitutional, it does not prohibit his possession of a "Glock switch." Doc. 46. For the following reasons, Kuone's motion is denied.

**I**

**A**

Federal Rule of Criminal Procedure 12 generally permits pretrial resolution of motions asserting "any defense, objection, or request" that can be determined "without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant may move to dismiss an indictment under Rule 12(b) for several reasons, including failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). On such a motion, "the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) (citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962), and *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)). If the Government is incapable, as a

matter of law, of proving its case beyond reasonable doubt based on facts in the indictment or the undisputed facts, dismissal is proper. *United States v. Chavez*, 29 F.4th 1223, 1226 (10th Cir. 2022).

These rules also apply where the defendant mounts an as-applied constitutional challenge to his indictment. The challenge must not require a trial on the merits to determine the constitutional objection, and the "legal adequacy of an indictment must be analyzed solely on the basis of the factual allegations contained in the indictment." *United States v. Pope*, 613 F.3d 1255, 1258 (10th Cir. 2010) (holding that a constitutional objection under 12(b) based on *District of Columbia v. Heller* could not be resolved pretrial). When facts outside the indictment or a set of agreed facts would assist in determining the validity of the defendant's claim, Rule 12 does not permit disposition before trial. *Id.* at 1259 (citing *United States v. Covington*, 395 U.S. 57, 60 (1969)). But if the challenge requires a court "to answer only pure questions of law," pretrial disposition is appropriate. *Id.* at 1260.

**B**

Kuone is charged with possessing a Glock switch. Doc. 1.[1] A Glock switch is small piece of plastic that allows a semi-automatic Glock pistol to function fully automatic.[2] *United States v. Brooks*, 100 F.4th 825, 839 (7th Cir. 2024). Kuone does not contest that a Glock switch has such functionality. *See* generally Doc. 46. Rather, he argues that Section 922(o)'s prohibition of machineguns offends the Second Amendment and that, as a matter of law, it does not prohibit the possession of a Glock switch. *Id.*

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

[2] Glock Ges.m.b.H., the company that manufactures Glock firearms, does not manufacture Glock switches. *See generally* ATF Fact Sheet OSIICID-22-118. Rather, the devices are all counterfeit and often produced with 3D printers. *Id.* Given their clandestine nature, Glock switches are also colloquially referred to as Glock chips, sears or automatic sears, and machinegun conversion devices. *See United States v. Martinez-Bristol*, 133 F.4th 149, 151 (1st Cir. 2025) (using the terms "chip" and "machinegun conversion device"); *United States v. Perez-Greaux*, 83 F.4th 1, 26 (1st Cir. 2023) (using the term "automatic sear"); *United States v. Torres-Perez*, 22 F.4th 28, 31 (1st Cir. 2021) (using the term "Glock chip").

## II

Kuone has not met his burden to show that Section 922(o) violates the Second Amendment. And Section 922(o) unambiguously prohibits possessing a Glock switch. Accordingly, Kuone's motion is denied.

### A

Kuone argues that his indictment should be dismissed because Section 922(o) "offends the history and tradition of the Second Amendment." Doc. 46 at 1. That argument fails because he has not established that the Second Amendment covers his conduct.

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. It confers an individual right to keep and bear arms, but not a right to "carry arms for *any sort* of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) (emphasis in original). Rather, "the Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 47 (2022) (quoting *Heller*, 554 U.S. at 627). To justify a firearm regulation, the Government must "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. The analysis involves ascertaining whether a regulation is "relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

When assessing whether a law offends the Second Amendment, the Supreme Court directs that courts apply a two-step analysis. The first step requires an individual to demonstrate "that the Second Amendment's plain text covers either the conduct they engaged or intended to engage in." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 113 (10th Cir. 2024); *see also United States v. Jackson*, __ F.4th __, 2025 WL 1509987, at *4 (10th Cir. 2025) (applying this standard in the criminal context); *United States v. Contreras*, 125 F.4th 725, 729 (5th Cir. 2025) (same). The Second Amendment applies if the individual "is 'part of the people whom the Second Amendment protects,'" the item at issue "is an 'arm' that is 'in common use today for self-defense,'" and the "'proposed course of conduct' falls within the Second Amendment." *Rocky Mountain*, 121 F.4th at 114 (quoting *United States v. Alaniz*,

69 F.4th 1124, 1128 (9th Cir. 2023)). If the individual meets his or her burden, the court proceeds to step two. *Id.*

At step two, the Government bears "the burden . . . to justify its regulation by demonstrating that it is 'consistent with the *principles* that underpin our' Nation's historical tradition of firearm regulation." *Rocky Mountain*, 121 F.4th at 113 (quoting *Rahimi*, 602 U.S. at 692) (emphasis in original). If the Government satisfies this burden, then "a court may conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Bruen*, 597 U.S. at 17). There is no obligation to "precisely match its historical precursors." *Rahimi*, 602 U.S. at 681. The regulation must "comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* Instead, the regulation's historical analogues must be "sufficiently similar to place [it] in our historical tradition." *Id.* at 700.

As in *United States v. Rayton*, No. 24-40045, 2025 WL 901987 (D. Kan. Mar. 25, 2025), Kuone has not met his burden of establishing that the Second Amendment applies to his possession of a machinegun. In particular, he fails to establish that machineguns are in common use today for self-defense, which strips them of Second Amendment protection.

Kuone acknowledges *Rayton* and notes that he has nothing additional to say on the issue. Doc. 48 at 1. Accordingly, Kuone's constitutional argument is rejected consistent with *Rayton* but preserved for appellate review.

**B**

Kuone also contends that dismissal is appropriate because Section 922(o) does not prohibit his conduct. Federal law prohibits the possession of a machinegun. 18 U.S.C. § 922(o). The term "machinegun" is defined in Section 5845(b) of the National Firearms Act. 18 U.S.C. § 921(a)(24). Section 5845(b) reads:

> (b) Machinegun.—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or

receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

Invoking that text, Kuone argues that because he only possessed a Glock switch, rather than a Glock switch and "the necessary remainder of the parts from which a machinegun can be assembled," he has committed no crime.[3] Doc. 46 at 2 (quotation marks omitted). That argument fails.

A Glock switch is statutorily a machinegun because it is a part designed solely and exclusively for use in converting a weapon fully automatic. Persuasive district court decisions have repeatedly, recently, and unanimously come to that conclusion. *See, e.g.*, *United States v. Bradley*, 766 F. Supp. 3d 769, 772 n.1 (S.D. Ohio 2025) (noting that the defendant's possession of a machinegun conversion device "falls squarely" within the ambit of Section 922(o)); *United States v. Alsenat*, 734 F. Supp. 3d 1295, 1308 (S.D. Fla. 2024) (quoting 26 U.S.C. § 5845(b)) ("[P]ossession of [a Glock switch] is prohibited because Congress decided to prohibit the possession of a part or combination of parts that is 'designed and intended . . . for use in *converting a weapon into a machinegun*.'") (emphasis in original); *United States v. Mitchell*, 734 F. Supp. 3d 702, 704 (N.D. Ohio 2024) ("Glock switches are considered machineguns under federal statute because they are a part which can transform a firearm into a machinegun."); *United States v. Cousar*, No. 23-10004, 2024 WL 1406898, at *12 (D. Kan. Apr. 2, 2024) ("[T]he only question this Court must answer is whether the right to keep and bear Arms covers possessing a machinegun such as a Glock switch.") (quotation marks omitted); *United States v. Lane*, 689 F. Supp. 3d 232, 249 n.18 (E.D. Va. 2023) (noting that a Glock switch "constitutes a part[ ] designed and intended, for use in converting a weapon into a machinegun and, therefore, fits the definition of machinegun under the statute") (alteration in original) (quotation marks omitted);

---

[3] Kuone does not dispute that a Glock switch qualifies as a part designed to convert a weapon into a machinegun. *See generally* Docs. 46 & 48. Rather, his only argument is that mere possession of a Glock switch is not enough.

5

*Alexander v. United States*, 686 F. Supp. 3d 608, 613 n.2 (W.D. Mich. 2023) (noting that Glock switches, "which allow the firearm to operate as a machinegun, are illegal under federal law."); *United States v. Cooperman*, No. 22-146, 2023 WL 4762710, at *2 (N.D. Ill. July 26, 2023) (quoting 26 U.S.C. § 5845(b)) ("Glock switches, also known as Glock conversion devices or auto sears, are considered machineguns under federal statute because they are parts 'designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.'"). It is little surprise, therefore, that most appellate courts accept it as a given that a Glock Switch falls within the definition of a machinegun and focus on other, downstream issues. *See, e.g.*, *United States v. Brown*, No. 24-30214, 2025 WL 1540953, at *1 (5th Cir. May 30, 2025) (accepting that possession of a Glock Switch violated Section 922(o)'s prohibition while focusing on a sentencing argument relative to the possession of the outlawed part); *United States v. Brooks*, 100 F.4th 825, 839–40 (7th Cir. 2024) (same); *United States v. Nieves-Diaz*, 99 F.4th 1, 6 (1st Cir. 2024) (finding that a Glock switch, referred to as a "chip," was a machinegun and a firearm under Section 5845). Kuone cites no authority to the contrary. In other words, he fails to argue that this unanimous conclusion of federal courts finding that Section 5845(b) prohibits possession of a Glock switch is wrong or inconsistent with controlling precedent.

This conclusion is buttressed by the Supreme Court's recent holding in *Garland v. Cargill*, 602 U.S. 406 (2024). In that case, the Court held that "a semiautomatic rifle equipped with a bump stock is not a 'machinegun' because it cannot fire more than one shot 'by a single function of the trigger.'" *Cargill*, 602 U.S. at 415. Because a Glock auto sear (a Glock switch) *does* allow the shooter to fire more than one shot by a single function of the trigger, nothing in *Cargill* undermines the conclusion that a Glock switch is a machinegun. Indeed, the Court was clear that a handgun auto sear such as a Glock switch is a machinegun. *See Cargill*, 602 U.S. at 420 n.4 ("An auto sear thus permits a shooter to fire multiple shots while engaging the trigger only once. ATF has accordingly recognized that modifying a semiautomatic rifle or handgun with an auto sear converts it into a machinegun.").

Instead, Kuone invokes *United States v. Wonschik*, 353 F.3d 1192 (10th Cir. 2004), but that does not support a different result. *Contra* Doc. 48 at 2. In *Wonschik*, the Tenth Circuit addressed the alleged circularity of Section 5845(b)'s two sentences. *See Wonschik*, 353 F.3d at

1196 ("'[T]he statute seems circularly to say that a 'machinegun' is, among other things, a 'receiver of a machinegun' or 'parts that can be made into a machinegun.'"). Ultimately the court held that Section 5845(b)'s second sentence refers to the definition in the first sentence, such that "the phrase 'a combination of parts from which a machinegun can be assembled' actually means 'a combination of parts from which [any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger] can be assembled.'" *Id.* at 1198 (alterations in original).

In fact, *Wonschik*'s construction of Section 5845(b) supports the conclusion that simple possession of a Glock switch is unlawful. A Glock switch is a machinegun because it is a part designed for use in converting a lawful weapon into an unlawful machinegun. *Wonschik*, 353 F.3d at 1198 (noting that the definition encompasses "parts designed and intended to convert a weapon into a machinegun); *accord United States v. Bradley*, 892 F.2d 634, 636 (7th Cir. 1990) ("[A]ny part designed solely or exclusively . . . for use in converting a weapon into a machinegun is a statutory machine gun."). There is nothing in *Wonschik* that suggests Section 5845 makes unlawful the possession of a Glock switch only if one is also shown to be in possession of a frame or receiver of a machinegun or a combination of parts from which a machinegun can be assembled. *Contra* Doc. 48 at 2–3.

The series qualifier canon also fails. *Contra* Doc. 46 at 3. That canon dictates that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). For instance, if an individual stated a desire to meet "an actor, director, or producer involved with the new Star Wars movie," it is immediately obvious that only such a person with ties to that movie—and not a different movie, such as Zoolander—will do. *E.g.*, *Lockhart v. United States*, 577 U.S. 347, 362 (2016) (Kagan, J., dissenting). In this dispute, the second sentence of Section 5845(b) lays out three items in the series: a frame or receiver, a conversion part or parts, and a combination of parts from which a machinegun could be assembled. *See* 26 U.S.C. § 5845(b); *accord United States v. Williams*, 364 F.3d 556, 558 (4th Cir. 2004).

Kuone offers two attempts at using the series qualifier canon to support his argument. Neither persuades. First, he suggests that "[t]he

7

statute's consistent, integrated use of the phrase 'parts' counsels treating the phrase 'from which a machine gun can be assembled' as modifying the foregoing phrases." Doc. 46 at 3. According to Kuone, this would dictate that possessing a Glock switch by itself is not illegal unless one also possesses parts from which a machinegun can be assembled. *Id.* That novel argument fails for a variety of reasons. For one thing, it is atextual. The second clause in the second sentence expressly refers to a singular "part" and a "combination of parts," both of which would be unlawful. For another, the argument proposes no serial modification at all: Kuone proposes to apply the modifying language only to the word "parts" and omits any modification of the other one or two subjects. *See* Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) (noting that the series qualifier canon applies when a construction involves "*all* nouns or verbs in a series") (emphasis added); *see Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 615 n.5 (10th Cir. 2018) (explaining that the series qualifier canon does not apply "when the series is not parallel"). In short, Kuone seeks to rewrite the statute, not construe its words. *See Scalia v. Wynnewood Ref. Co., LLC*, 978 F.3d 1175, 1183 (10th Cir. 2020) (rejecting an argument akin to Kuone's for the same reason); *Williams*, 364 F.3d 559 (characterizing an argument similar to Kuone's as "strained and unworkable," and noting that the phrase "'from which a machinegun can be assembled if such parts are in the possession or under the control of a person' modifies only the third distinct category of 'a combination of parts.'").

At the suppression hearing Kuone advanced another iteration of the series qualifier argument. In particular, he argued that the phrase "if such parts are in the possession or under the control of a person" should be applied to each of the three items in the series. *See also* Doc. 46 at 2 (emphasizing this language in a block quote). In Kuone's view, this would convert the statute's use of the word "part" in a singular sense into a requirement that multiple parts must be possessed—such as a Glock switch plus a trigger mechanism, perhaps—before a violation would occur. But again, that is not what the statute says: The second clause of the second sentence recognizes that possession of either a "*part* designed and intended solely and exclusively, *or combination of parts* designed and intended, for use in converting a weapon into a machinegun" is unlawful. 26 U.S.C. § 5845(b) (emphasis added). Kuone identified no case, either in his briefs or at the suppression hearing, where a court has read Section 5845 as he does now.

Kuone also chafes at relying on any other circuit's analysis because, he says, there is a known circuit split between *Wonschik* and every other circuits' construction of Section 5845(b). Doc. 48 at 1–2 (citing *United States v. Carter*, 465 F.3d 658 (6th Cir. 2006)). The Sixth Circuit indeed referred to the Tenth Circuit's construction of the relationship between Section 5845(b)'s first and second sentences as "somewhat convoluted." *Carter*, 465 F.3d at 663. But this apparent dissatisfaction with the clarity of *Wonschick*'s construction is immaterial because Kuone fails to offer any reason to believe possession of a Glock Switch would be lawful in either this or any other circuit.

Finally, Kuone's invocation of the rule of lenity fails. *Contra* Doc. 46 at 4. That rule requires courts to interpret ambiguous statutes in favor of criminal defendants. *United States v. Tony*, 121 F.4th 56, 69 (10th Cir. 2024). But it only applies when, "after consulting traditional canons of statutory construction," there is "grievous ambiguity or uncertainty." *Shular v. United States*, 589 U.S. 154, 165 (2020). And Kuone has failed to identify any ambiguity regarding whether Section 5845(b) captures possession of a Glock switch. *See Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 45 F.4th 306, 321 (D.C. Cir. 2022) (declining to apply the rule of lenity to Section 5845(b)), *overruled on other grounds by Garland v. Cargill*, 602 U.S. 406 (2024); *United States v. Evans*, 978 F.2d 1112, 1113 n.2 (9th Cir. 1992) (same). As a result, the rule of lenity does not apply.

### III

For the foregoing reasons, Kuone's Motion to Dismiss, Doc. 46, is DENIED.

It is so ordered.

Date: June 27, 2025           s/ Toby Crouse
                                                Toby Crouse
                                                United States District Judge